UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

VIRGINIA LINEN SERVICE, INC.,

        Plaintiff,

v.                                                                                                          Civil Action No. 3:25-cv-410

LEONARD AUTOMATICS, INC.

And

JEFF FRUSHTICK, Individually.

        Defendants.

**COMPLAINT**

Plaintiff Virginia Linen Service, Inc. ("VLS"), by counsel, seeks judgment against Defendants Leonard Automatics, Inc. ("Leonard") and Jeff Frushtick, Individually, on the grounds and in the amount set forth herein. In support thereof, VLS states its Complaint against Defendants as follows:

**PARTIES**

1.      Plaintiff, ("VLS"), is a corporation organized and existing under the laws of the Commonwealth of Virginia with its principal place of business at 1440 Hickory Hill Road, Petersburg, Virginia.

2.      Defendant Leonard Automatics, Inc. is a foreign non-stock corporation incorporated in North Carolina with its principal office located at 5894 Balsom Ridge Road, Denver, North Carolina, 28037.

1

3. At all times relevant to this Complaint, Jeff Frushtick was the president and owner of, or otherwise employed by, Leonard Automatics, Inc. Upon information and belief, Mr. Frushtick resides in and is a citizen of North Carolina.

4. Jurisdiction is proper under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and the controversy is between citizens of different states.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts and omissions giving rise to VLS's claims occurred within the Eastern District of Virginia.

**FACTS**

6. This action arises from a contractual dispute between VLS and Defendants, involving a breach of contract and fraudulent misrepresentations with respect to contracts for the fabrication and delivery of equipment to be used in two of VLS's commercial laundry facilities.

7. On or about December 21, 2021, VLS, through its affiliate, Buckeye Linen Service, Inc., issued a purchase order to Leonard for a 5-lane hybrid stack-n-store multi-lane draping stacker with a large piece primary folder. The December 21, 2021 Purchase Order is attached as **Exhibit A.**

8. Prior to December 21, 2021, Leonard, through its employees and/or agents, including but not limited to Jeff Frushtick, represented to VLS that Leonard had the capability to fabricate a 5-lane stack-n-store multi-lane draping stacker to VLS's specifications.

9. VLS relied on Leonard's representations, including representations made by Mr. Frushtick, when it selected Leonard over other vendors to fabricate the 5-lane stack-n-store multi-lane draping stacker for its commercial laundry facility.

10. After Leonard accepted VLS's December 21, 2021 Purchase Order, VLS paid Leonard a $40,000 deposit for the fabrication and delivery of the 5-lane hybrid stack-n-store. A copy of the Invoice for the December 21, 2021 Purchase Order is attached as **Exhibit B.**

11. On or about December 22, 2021, VLS issued another purchase order to Leonard for a 6-lane vacuum feeder and a 6-lane stack-n-store for a Jensen ironer. The December 22, 2021 Purchase Order is attached as **Exhibit C.**

12. Prior to accepting VLS's Purchase Order, Leonard knew or should have known the 6-lane vacuum feeder and the 6-lane stack-n-store were to be used at VLS's commercial laundry facility in Petersburg, Virginia.

13. The December 22, 2021 Purchase Order included a guaranteed delivery date of no later than February 20, 2022. Exh. C.

14. VLS paid Leonard an $80,000 deposit for the fabrication and delivery of the 6-lane vacuum feeder and 6-lane stack-n-store. A copy of the Invoice for the December 22, 2021 Purchase Order is attached as **Exhibit D.**

15. Prior to accepting VLS's Purchase Orders, Defendants knew or should have known VLS was a commercial linen and textile rental company.

16. Prior to accepting VLS's Purchase Orders, Defendants knew or should have known the equipment included in the December 21, 2021 and December 22, 2021 Purchase Orders was to be used in commercial laundry facilities.

17. At all relevant times, Leonard, by and through its employees and/or agents, including but not limited to Jeff Frushtick, represented it had the capacity to manufacture and deliver the equipment ordered by VLS and that such equipment would be suitable for use in VLS's commercial laundry facilities.

3

18. Leonard failed to comply with its obligations under the December 21, 2021 and December 22, 2021 purchase orders.

19. The 6-lane feeder and 6-lane stack-n-store were not delivered to VLS's Petersburg commercial laundry facility until August 2022, six months after the guaranteed delivery date of February 20, 2022.

20. Since its installation, the 6-lane feeder and 6-lane stack-n-store have not functioned as promised and have been unfit for a commercial setting.

21. VLS notified Leonard of the defects in the equipment on multiple occasions and provided Leonard ample opportunity to correct the defects.

22. Leonard has failed to repair or otherwise correct the defects in the equipment to date.

23. Upon Leonard's failure to correct the defective equipment, VLS, subject to its rights under the December 22, 2021 Purchase Order, requested Leonard retrieve the defective equipment and issue a refund of the expenses paid by VLS.

24. Leonard failed to retrieve the defective equipment pursuant to its obligations under the December 22, 2021 Purchase Order, which states:

> IN CASE ANY ITEMS ARE DEFECTIVE IN MATERIAL OR WORKMANSHIP, OR OTHERWISE FAIL TO MEET THE REQUIREMENTS OF THIS PURCHASE ORDER, PURCHASER SHALL HAVE THE RIGHT TO REJECT SUCH ITEMS. REJECTED ITEMS WILL BE RETURNED TO SELLER AT SELLER'S RISK FOR CREDIT AND SELLER SHALL PAY PURCHASER FOR ALL HANDLING AND TRANSPORTATION EXPENSES INCURRED IN CONNECTION WITH REJECTED ITEMS. SELLER SHALL PAY PURCHASER FOR EXPENSES INCURRED IN CORRECTING DEFECTIVE ITEMS.

25. Leonard also failed to fulfill its obligations under the December 21, 2021 Purchase Order.

26. With respect to the 5-lane hybrid multi-lane draping stacker and 5-lane reject system intended for VLS's Buckeye affiliate, despite receiving VLS's $40,000 deposit, Leonard never began manufacturing the equipment as promised.

4

27. At all times relevant, including prior to December 21, 2021, Leonard did not have the capability to fabricate a 5-lane hybrid multi-lane draping stacker and 5-lane reject system, suitable for use by VLS in its commercial laundry business, as represented.

28. Leonard and Mr. Frushtick knew or should have known Leonard did not have the capability to fabricate a 5-lane hybrid multi-lane draping stacker to VLS's specifications when they represented to VLS that Leonard had such capacity.

29. Notwithstanding its failure to even begin manufacturing of the subject equipment and/or its lack of ability to manufacture the equipment, Leonard has not refunded VLS the $40,000 deposit paid for the December 21, 2021 Purchase Order.

30. Leonard, through statements made by its employees and/or agents, including but not limited to Mr. Frushtick, knowingly and intentionally misled VLS about its capabilities to manufacture equipment suitable for a commercial laundry setting.

31. VLS reasonably relied upon Leonard's and Mr. Frushtick's representations when choosing Leonard to manufacture equipment for two of its commercial laundry facilities.

32. As a result of Leonard's breach of contract and Leonard's and Mr. Frushtick's fraudulent misrepresentations of material fact, VLS suffered monetary damages, and continues to suffer monetary damages on an ongoing basis, for which it is entitled to relief.

## COUNT I: BREACH OF CONTRACT

**(December 21, 2021 Purchase Order)**

33. VLS incorporates by reference the allegations in the foregoing paragraphs of its Complaint as if set forth fully herein.

34. A valid contract existed between VLS and Leonard wherein Leonard was hired to manufacture the equipment described in VLS's December 21, 2021 Purchase Order. Exh. A.

35. Under the parties' contract, in exchange for payment by VLS, Leonard agreed to manufacture a 5-lane hybrid stack-n-store which was to be delivered no later than February 20, 2022.

36. VLS paid Leonard a $40,000.00 deposit for the 5-lane hybrid stack-n-store on January 10, 2022.

37. Leonard breached the parties' contract by failing to manufacture and deliver the 5-lane hybrid stack-n-store.

38. Despite failing to even begin the fabrication of the hybrid stack-n-store, Leonard has not refunded VLS the deposit it paid for the equipment.

39. As a result of Leonard's material breach, VLS suffered damages including the $40,000.00 in expenses paid to Leonard.

40. VLS also suffered a loss of income due to the business disruption caused by Leonard's breach.

41. Based on the material breaches of the parties' agreement as documented in the December 21, 2021 Purchase Order, VLS is entitled to $175,000 in damages and attorneys' fees.

## COUNT II:  BREACH OF CONTRACT

**(December 22, 2021 Purchase Order)**

42. VLS incorporates by reference the allegations in the foregoing paragraphs of its Complaint as if set forth fully herein.

43. A valid contract existed between VLS and Leonard wherein Leonard was hired to manufacture the equipment described in VLS's December 22, 2021 Purchase Order. Exh. C.

44. Under the parties' contract, in exchange for payment by VLS, Leonard agreed to manufacture and install a 6-lane vacuum feeder and a 6-lane stack-n-store for a 2-roll Jensen ironer. Exh. C.

45. The Purchase Order set forth specifications for the vacuum feeder including, but not limited to:

    a. A working width of 156";

    b. Vacuum assist extended feeding table – deep customer design to fit VLS feeding carts per attached dimensions;

    c. A working reject system; and

    d. Contoured transition bed with extended transition fingers and vacuum system to feed directly into Jensen ironer.

46. The Purchase Order set forth specifications for the stack & store including, but not limited to:

    a. A double reject system with each reject conveyor to discharge to an incline conveyor which will discharge at a minimum 34" height into a basket way from the ironer toward the catcher; and

    b. The reject system will be compatible & will work either with LVF vacuum feeder reject buttons and mobile inspection system.

47. Leonard Automatics was to confirm and ensure each machine was properly grounded. Exh. C.

48. The parties' agreement included a three-year warranty by Leonard, from the date of the acceptance, for all parts and labor if a major repair was necessary including free freight on all replacement parts. Exh. C.

49. Leonard further agreed to "perform all work in a good, workmanship manner and in accordance with all appropriate and applicable local, state, & federal codes and regulations." Exh. C.

50. The Purchase Order also explicitly gave VLS the right to reject any items that were defective "in material or workmanship or otherwise fail to meet the requirements of this purchase order." Exh. C.

51. Leonard agreed to deliver the equipment "no later than February 20, 2022." Exh. C.

52. In accordance with the parties' agreement, VLS paid Leonard a deposit of $80,000 for the vacuum feeder and stack-n-store on January 10, 2022. Exh. D.

53. Leonard breached the parties' contract first by failing to deliver the equipment by February 20, 2022. Indeed, Leonard did not deliver the equipment until six months later in August 2022.

54. Leonard's breach and the delay in delivery caused a disruption in VLS's business activities resulting in lost profits.

55. Leonard further breached the parties' contract by failing to perform its work in a "good, workmanship manner" and by delivering equipment that had the following defects amongst others:

    a. The nose vacuum nozzles on the equipment are not properly functioning and field modifications by Leonard have resulted in missing belts and unusable lane capacity;

    b. The reject system is not working consistently;

    c. Poorly constructed electrical cabinet door;

8

    d.    Continuous faults of the vacuum blower;

    e.    Poorly designed cable management and connectivity to existing ironer;

    f.    Paint issues on the conveyor bed and multiple other spots on feeder and folder, which already are causing rust;

    g.    Not functioning reject belts and system; and

    h.    Rear guard on stack-n-store improperly designed and falling apart.

56. VLS has notified Leonard of the above-listed and other defects and provided Leonard ample opportunity to repair the equipment.

57. Leonard breached its express three-year warranty when it failed to repair the defective equipment, which was reported within three years of acceptance.

58. VLS then, pursuant to its rights under the parties' contract, rejected the equipment and requested Leonard retrieve the equipment and issue VLS a refund.

59. Notwithstanding the defects, VLS, acting in good faith in accordance with its obligations under the Purchase Order, made an additional payment toward the equipment in November 2023.

60. Despite VLS compliance with its obligations under the Purchase Order and notice to Leonard of the various defects in the equipment, Leonard further breached the parties' contract by failing to correct the defects and/or otherwise comply with its obligations by accepting VLS's return of the defective equipment.

61. Leonard breached the parties' contract by refusing to accept VLS's return of the defective equipment, including failing to retrieve the defective equipment at Leonard's expense and provide VLS a refund and/or reimbursement for expenses incurred in attempting to correct the defects.

62. As a result of Leonard's breaches, VLS suffered damages including the $130,000.00 in expenses paid to Leonard for the equipment.

63. VLS also suffered a loss of income due to business disruptions caused by the defective equipment.

64. Based on the material breaches of the parties' agreement as documented in the December 22, 2021 purchase order, VLS respectfully requests the Court order a recission of the agreement, and demands Leonard pay $215,000 in damages and reasonable attorneys' fees.

## COUNT III:  BREACH OF IMPLIED WARANTY OF MERCHANTABILITY

65. VLS incorporates by reference the allegations in the foregoing paragraphs of its Complaint as if set forth fully herein.

66. At all times relevant, Leonard advertised and otherwise represented itself as a commercial equipment manufacturer and servicer, specializing in equipment for textile rental, garment manufacturing, and heat treatment.

67. Leonard was a seller of commercial equipment including vacuum-feeders and stack-n-stores.

68. Leonard breached its implied warranty of merchantability when it delivered a 6-lane vacuum feeder and 6-lane stack-n-store which were not fit for the ordinary purposes for which they were used.

69. As a result of Leonard's breach of its implied warranty of merchantability, VLS suffered damages including the $130,000.00 in expenses paid to Leonard for the equipment and lost income due to the business disruption caused by the defective equipment.

## COUNT IV:  BREACH OF IMPLIED WARANTY OF FITNESS FOR A PARTICULAR PURPOSE

70. VLS incorporates by reference the allegations in the foregoing paragraphs of its Complaint as if set forth fully herein.

71. At all times relevant, Leonard advertised and otherwise represented itself as a commercial equipment manufacturer and servicer, specializing in equipment for textile rental, garment manufacturing, and heat treatment.

72. On and before December 22, 2021, Leonard knew the 6-lane vacuum feeder and 6-lane stack-n-store included in VLS's December 22, 2021 Purchase Order were to be used in VLS's commercial laundry facility in Petersburg, Virginia.

73. VLS relied on Leonard's skill and judgment to furnish equipment suitable for VLS's commercial laundry facility.

74. Leonard breached its implied warranty of fitness for a particular purpose when it delivered equipment which was not fit for use in VLS's commercial laundry facility.

75. As a result of Leonard's breach of its implied warranty of fitness for a particular purpose, VLS suffered damages including the $130,000.00 in expenses paid to Leonard for the equipment and lost income due to the business disruption caused by the defective equipment.

## COUNT V: FRAUD IN THE INDUCEMENT

**(Against Jeff Frushtick, Individually)**

76. VLS incorporates by reference the allegations in the foregoing paragraphs of its Complaint as if set forth fully herein.

77. Prior to VLS issuing the December 21, 2021 Purchase Order for the 5-lane hybrid stack-n-store, Mr. Frushtick represented to VLS that Leonard had the capacity to manufacture that piece of equipment to the specifications required of VLS and intended manufacturing of that equipment in a timely manner.

78. Mr. Frushtick further assured VLS that Leonard was capable of manufacturing the 5-lane hybrid stack-n-store when he accepted VLS's December 21, 2021 Purchase Order.

79. VLS relied on Mr. Frushtick's representations when it chose to issue the December 21, 2021 Purchased Order to Leonard instead of other vendors.

80. Leonard's capacity and ability to manufacture a 5-lane hybrid stack-n-store was a material fact and substantial factor considered by VLS in selecting a vendor to order the equipment needed for its commercial laundry facility. Had VLS known Leonard could not produce the piece of equipment needed, it would not have ordered the equipment from Leonard.

81. VLS's reliance on Mr. Frushtick's representations was reasonable. Leonard is a commercial equipment manufacturer specializing in equipment for textile rentals and Mr. Frushtick was the president and owner of Leonard at the time he made the representations about Leonard's capabilities.

82. To date, Leonard has not delivered or even begun manufacturing the 5-lane hybrid stack-n-store, which it had promised to deliver by February 20, 2022.

83. Based on Leonard's failure to comply with its contractual obligations, VLS cancelled its purchase order in March 2024.

84. Despite not delivering or beginning production of the 5-lane hybrid stack-n-store, Leonard has refused to issue VLS a refund of its $40,000.00 deposit.

85. Given that Leonard did not even begin work on the purchased equipment, VLS has reason to believe its deposit was misappropriated by Mr. Frushtick and/or Leonard.

86. Upon information and belief, and based on Mr. Frushtick's divestment of all or part of his ownership in Leonard, it is apparent that Mr. Frushtick and Leonard's financial condition in

December 2021 caused Mr. Frushtick to accept VLS's deposit with no intention of manufacturing the contracted for equipment.

87. Mr. Frushtick knowingly and willingly falsely represented to VLS that Leonard was capable of manufacturing and delivering a 5-lane hybrid stack-n-store by February 20, 2022.

88. At the time Mr. Frushtick made these representations, Leonard was not capable of manufacturing a 5-lane hybrid stack-n-store and/or delivering the equipment by the promised deadline.

89. As president and owner of Leonard, Mr. Frushtick knew or should have known Leonard was not capable of manufacturing a 5-lane hybrid stack-n-store and/or delivering the equipment by the promised deadline.

90. As result of Mr. Frushtick's false representations about Leonard's capabilities, VLS has incurred additional expenses, including purchasing the necessary equipment from another manufacturer.

91. As a result of Mr. Frushtick's false representations, VLS suffered damages including the $40,000.00 deposit paid to Leonard and loss of income due to the business disruption caused by Mr. Frushtick's false representations about Leonard's capabilities.

## COUNT VI: FRAUD IN THE INDUCEMENT

**(Against Leonard Automatics, Inc.)**

92. VLS incorporates by reference the allegations in the foregoing paragraphs of its Complaint as if set forth fully herein.

93. At all relevant times, Mr. Frushtick was an agent of Leonard. As such, Leonard is vicariously liable for Mr. Frushtick's misrepresentations.

13

94. As a result of Mr. Frushtick's false representations, VLS suffered damages including the $40,000.00 deposit paid to Leonard and loss of income due to the business disruption caused by Mr. Frushtick's false representations about Leonard's capabilities.

**PRAYER FOR RELIEF**

WHEREFORE, Virginia Linen Service, Inc. respectfully prays for judgment in favor of Plaintiff against Defendants in the principal amount $390,000.00 in damages, with interest at the legal rate from the date of breach to the date that judgment is paid in full, punitive damages up to $350,000.00 and an award of its attorneys' fees and costs, and such other relief as the Court deems just and proper.

**VIRGINIA LINEN SERVICE, INC.,**

By:    /s/ Martin A. Conn, Esq.
            Counsel

Martin A. Conn, Esq. (VSB No. 39133)
Sophia M. Miller, Esq. (VSB No. 93404)
Moran Reeves & Conn PC
1211 East Cary Street
Richmond, Virginia 23219
Telephone: (804) 421-6250
Fax: (804) 421-6251
mconn@moranreevesconn.com
sbrasseux@moranreevesconn.com
*Counsel for Plaintiff*

14